Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 02-33699 (LMW) |
| | ) | | |
| NEW ENGLAND NATIONAL, LLC, | ) | CHAPTER | 11 |
| | ) | | |
| DEBTOR. | ) | | |
| | | | |
| NEW ENGLAND NATIONAL, LLC, | ) | ADV. PRO. NO. | 10-3033 |
| | ) | | |
| PLAINTIFF | ) | ECF NOS. | 203, 230 |
| | ) | | |
| vs. | ) | | |
| | **)** | | |
| TOWN OF EAST LYME, | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

**APPEARANCES**

Mark E. Block, Esq.                                    Attorney for Movant/Defendant
Amanda L. Sisley, Esq.
Block, Janney & Pascal, LLC
138 Main Street
P.O. Box 310
Norwich, CT 06360

William S. Gannon, Esq.                                Attorney for Plaintiff
William S. Gannon, PLLC
889 Elm Street, 4th Floor
Manchester, NH 03101

**MEMORANDUM AND ORDER
RE: SUBMISSION OF PROPOSED FINDINGS OF MATERIAL FACT**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matters before the court in this adversary proceeding are (a) that certain Defendant's Motion To Dismiss or for Abstention (ECF No. 203, together with supporting memorandum of law, the "Dismiss/Abstain Motion")[1] filed by the above-referenced defendant (the "Town") and (b) the above-referenced debtor's (the "Debtor") objection thereto (ECF No. 230, the "Objection"). For the reasons discussed more fully below, the court has determined that it would be of substantial benefit to the court for the parties each to submit to the court proposed findings of material fact (but not proposed conclusions of law) with respect to these matters. The purpose of the "memorandum" portion of this Memorandum and Order is to clarify the law for the parties (to the extent appropriate at this time) in order to enable them to focus their respective "proposed findings" to be of the greatest assistance to the court.

## I.    PROCEDURAL BACKGROUND[2]

### A.    The Case

The Debtor commenced the above-referenced chapter 11 case by the filing of a voluntary petition on August 1, 2002. The Debtor's Third Amended Plan of Reorganization (Case ECF No. 259, the "Plan") was confirmed by order dated August 28, 2006. (*See* Case ECF No. 277.) An application for entry for final decree (*see* Case ECF No. 324, the "Final Decree Application") was filed by the Debtor on April 12, 2007 but was "marked off with right to reclaim [to the hearing calendar]" by the Debtor on June 18, 2008. (*See* Case Docket entry for June 18, 2008.) As of the

---

[1]   References to the docket of this adversary proceeding appear in the following form: "ECF No. __." References to the docket of the above-referenced chapter 11 case appear in the following form: "Case ECF No. __."

[2]   This section is limited to the facts that are necessary to place these matters into context for present purposes only.

date hereof, the Final Decree Application has not been reclaimed to the hearing calendar, no other similar application has been filed and no final decree has been issued in this case.

On December 1, 2008, the Debtor and the Town jointly filed that certain Debtor and East Lyme Joint Motion for Order Approving Partial Compromise (Case ECF No. 472, the "Joint Motion"). The Compromise Agreement that is the subject of the Joint Motion appears in the record as Case ECF No. 476 (the "Compromise Agreement"). That certain Order Approving Compromise and Settlement was issued on December 4, 2008. (*See* Case ECF No. 478.)

### B.  This Adversary Proceeding

The Debtor commenced this adversary proceeding against the Town by complaint (ECF No. 1) filed on May 13, 2010.[3] With leave of court, a First Amended and Restated Complaint (ECF No. 24, the "Amended Complaint") was filed on July 9, 2010. The Amended Complaint relates in one respect or another to the Compromise Agreement. The Town's Answer and Special Defenses to First Amended And Restated Complaint (ECF No. 25) was filed on July 20, 2010. An initial pretrial order was issued in this adversary proceeding on August 17, 2010 and, from time to time, amended pretrial orders have entered. The most recent amended (stipulated) pretrial order issued on September 12, 2011. (*See* ECF No. 199, the "PTO.") The PTO provided for (among other things) a trial on the merits of the Amended Complaint commencing on November 7, 2011 (and continued to November 8, 9, 10 if necessary). (*See* PTO.)

---

[3]  A second adversary proceeding against the Town (A.P. # 11-3058) was commenced by the Debtor by the filing of a complaint on October 24, 2011. A similar but separate memorandum and order will issue in those proceedings.

- 3 -

The Town filed the Dismiss/Abstain Motion on October 7, 2011. (*See* ECF No. 203.)[4]  In relevant part, the Dismiss/Abstain Motion challenges this court's power to enter a final order under the authority of *Stern v. Marshall*, 131 S. Ct. 2594 (2011).[5]  The Dismiss/Abstain Motion also obliquely questions this court's jurisdiction under 28 U.S.C. § 1334(b) but purports to reserve the issue for later action.[6]  However, this court has a duty to confirm its jurisdiction before proceeding

---

[4] On the same day, the Town filed a motion for the District Court to withdraw the reference to this court under 28 U.S.C. § 157 with respect to this adversary proceeding. (*See* ECF No. 212.) That motion now is pending before the District Court.

[5] In the Dismiss/Abstain Motion, the Town also states in relevant part as follows:

> The Town notes that it included arguments regarding the impact of *Stern* on this adversary proceeding in its Supplemental Memorandum of Law in Support of Its Objection to Debtor's Motion for Scheduling Order and Motion to Dismiss (Doc #644) filed in the underlying bankruptcy action. At the September 26, 2011 hearing, the Town apprised the Court of these arguments and the Court advised that the Town should file a separate Motion in this adversary proceeding if it wished the Court to entertain such arguments. This Motion followed.

(ECF No. 203 at 1 n.1 (Memorandum of Law).)

[6] The Dismiss/Abstain Motion states in relevant part as follows:

> The Town does not concede that the Bankruptcy Court has "related to" jurisdiction to hear the Contested Matter but rather, at this time, the Town has declined to evaluate the possibility of filing a Motion to Dismiss for lack of jurisdiction to prevent further allegations of Breach of the Compromise Agreement as a result of such filing. It should also be noted that the Debtor's Plan of Reorganization was confirmed 2005 [sic], and both the Adversary Proceeding and the Contested Matter are post-confirmation. Other than any post-confirmation obligations that the Debtor may have, the Debtor is presently and has been for six (6) years conducting its business outside the "protection" of the Bankruptcy Court.

(ECF No. 203 at 3 n.2 (Memorandum of Law).) The Dismiss/Abstain Motion also raises "permissive" abstention pursuant to 28 U.S.C. § 1334(c)(1). (*See id.* at 5 *et seq.*) The issue of permissive abstention (and, as explained below, the *Stern* issue) are beyond the scope of this Memorandum and Order and are reserved for later treatment.

further. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 107-08 (2d Cir. 1997). *See also In re Cody, Inc.,* 281 B.R. 182, 189 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part,* 338 F.3d 89 (2d Cir. 2003) (determining that bankruptcy court should have determined the existence of subject matter jurisdiction before deciding to abstain). *Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) (finding that court should determine jurisdiction before proceeding to the merits).

A non-evidentiary hearing was held on these matters on November 2, 2011. On November 3, 2011, this court issued an order which provided in relevant part as follows:

> **NOW, THEREFORE,** for reasons of judicial economy, it hereby is **ORDERED** that the Adversary Proceeding hereby is stayed pending adjudication of the [j]urisdictional [m]atters (both in this court and the District Court); *provided, further,* that nothing in this order is intended to (or shall) stay adjudication of the [j]urisdictional [m]atters (including, but not limited to, the "mini-trial" scheduled in this court with respect to the [j]urisdictional [m]atters commencing on November 9, 2011) . . . .

(ECF No. 240 at 1-2.) A two-day "mini-trial" on the jurisdictional matters raised in the Dismiss/Abstain Motion and the Objection took place on November 9 and 10, 2011. Post "mini-trial" briefing has been completed. (*See* ECF Nos. 252 (Town's post-trial brief), 254 (Debtor's answer brief), 255 (Town's reply brief).) None of the aforementioned post-trial briefs contained a statement of facts *per se.*

## II.    LEGAL BACKGROUND

### A.    In General

"The [Supreme Court's] holding in *Stern* [, *supra*] did not concern the subject matter jurisdiction of the bankruptcy court, but rather, the allocation of the authority as between the district court and the bankruptcy court to enter final judgments." *Empire State Bldg Co. LLC v. New York*

*Skyline, Inc (In re New York Skyline, Inc.),* 471 B.R. 69, 79 (Bankr. S.D.N.Y. 2012). "That allocation does not implicate questions of subject matter jurisdiction." *Id.* (citation and internal quotation marks omitted). With respect to issues of subject matter jurisdiction, the burden is on the plaintiff to prove such jurisdiction by a preponderance of the evidence. *See Vanguard Prod. Corp. v. Citrin (In re Indicon, Inc.),* No. 11-5133, 2012 WL 1110115, at *2 (Bankr. D. Conn. Mar. 30, 2012 (Shiff, J.).

Section 157(a) of title 28 of the United States Code governs certain "[p]rocedures" which govern the allocation of bankruptcy work between the district courts and the bankruptcy courts and provides as follows:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title11 shall be referred to the bankruptcy judges for the district.[7]
>
> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to–
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate;

---

[7] The District Court for this District has made that reference pursuant to a certain Order dated September 21, 1984 (Daly, C.J.) which referred to the "Bankruptcy Judges for this District *inter alia,* all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . ."

> (D) orders in respect to obtaining credit;
>
> (E) orders to turn over property of the estate;
>
> (F) proceedings to determine, avoid, or recover preferences;
>
> (G) motions to terminate, annul, or modify the automatic stay;
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> (I) determinations as to the dischargeability of particular debts;
>
> (J) objections to discharges;
>
> (K) determinations of the validity, extent, or priority of liens;
>
> (L) confirmations of plans;
>
> (M) orders approving the use or lease of property, including the use of cash collateral;
>
> (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
>
> (P) recognition of foreign proceedings and other matters under chapter 15 of title 11 . . . .

28 U.S.C.A. § 157 (West 2012). Because a district court cannot refer a proceeding over which it has no jurisdiction, Section 157 *a priori* assumes that the district court has such jurisdiction.

The bankruptcy jurisdiction of the district courts is a creature of Section 1334 of title 28 of the United States Code which provides (in relevant part) as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11 . . . .

28 U.S.C.A. § 1334 (West 2012).

As discussed above, *Stern* does not implicate the District Court's subject matter jurisdiction here. Accordingly, it is appropriate for the court first to consider its subject matter jurisdiction (which, as explained above, derives from that of the District Court). Only after confirming the existence of that jurisdiction should this court proceed to the *Stern* and abstention issues (both of which issues are reserved as discussed above). That approach is followed below.

**B.     Subject Matter Jurisdiction Under Section 1334**

**1.     Preconfirmation Jurisdiction**

Section 1334(b) provides for three types of district court jurisdiction over bankruptcy proceedings: "arising under" jurisdiction; "arising in" jurisdiction; and "related to" jurisdiction. *See* 28 U.S.C. § 1334(b). "Arising under" jurisdiction exists when the proceeding invokes a substantive right created by federal bankruptcy law. *See, e.g., Browning v. Levy,* 283 F.3d 761, 773 (6th Cir. 2002). "A claim 'arises in' bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy action, because it has no existence outside of bankruptcy." *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),* 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003). "Jurisdiction under 28 U.S.C. § 1334(b)'s 'related to' prong rests where the proceeding's outcome 'could conceivably have any effect on the estate being administered in bankruptcy.'" *Russian Media*

*Group, LLC v. Echostar Commc'ns Corp.,* No. 3:03-CV-1263 (WWE), 2009 WL 4036849, at *4 (D. Conn. Nov. 19, 2009) (citation omitted).[8]

### 2. **Postconfirmation Jurisdiction**

#### a. **In General**

For postconfirmation jurisdiction to exist with respect to a proceeding, first, the confirmed plan must provide that the bankruptcy court will retain jurisdiction over the proceeding postconfirmation and second, the proceeding otherwise must fall within the ambit of the court's Section 1334 jurisdiction.[9] *See In re Metro-Goldwyn-Mayer Studios Inc.,* 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011). It is undisputed that the Plan contains an adequate retention of jurisdiction provision. Accordingly, the issue is whether there is subject matter jurisdiction here under Section 1334.

"[M]ost courts agree that once confirmation occurs, the bankruptcy court's jurisdiction [under Section 1334] shrinks." *Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.),* 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011) (citation and internal quotation marks omitted). "A party can invoke the authority of the bankruptcy court to exercise post confirmation jurisdiction if the matter has a close nexus to the bankruptcy plan." *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.),* 448 Fed. Appx. 134, 137 (2d Cir. Nov. 29, 2011), *cert. denied*, 2012

---

[8] "[C]ore proceedings are those proceedings that arise in a bankruptcy case/or [arise] under Title 11 [within the purview of Section 1334(b)]." *Stern,* 131 S. Ct. at 2604. A matter that neither arises under title 11 nor arises in a title 11 case but is merely "related to" the title 11 case within the purview of Section 1334(b) is a non-core proceeding. *See* 28 U.S.C. § 157(b)(3).

[9] The reason why the "effect on the estate" test is inappropriate for postconfirmation proceedings is explained in *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164-67 (3d Cir. 2004).

WL 2368700 (U.S. June 25, 2012) (summary order). *See also Metro-Goldwyn-Mayer, supra* at 556 ("The 'close nexus' test is met when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan . . . ." (citation and internal quotation marks omitted)).

There appears to be a disagreement between (or possibly among) the Courts of Appeal in that at least one circuit limits the "close nexus" requirement to non-core proceedings. *See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 260 (3d Cir. 2007) ("[T]he 'close nexus' standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core 'related to' proceeding in the post-confirmation context."). The Third Circuit adopted that approach as a matter of judicial efficiency and because that was the approach taken by the courts below. *See id.* at 257 n.18 ("We . . . find . . . [applying the close-nexus test] inefficient in situations like the one before us because a finding that the case [is core because it] 'aris[es] in bankruptcy' would 'kill two birds with one stone' inasmuch as such a finding conclusively would establish both subject matter jurisdiction and the bankruptcy court's authority to enter final orders."). On the other hand, the Second Circuit has applied the "close nexus" requirement to both core and non-core proceedings. *See DPH Holdings,* 448 Fed. Appx. at 136-37 (After determining that the matter was core, the court applied the "close nexus" test to find postconfirmation jurisdiction.). *See also In re DPH Holdings Corp.,* 437 B.R. 88, 97 (S.D.N.Y. 2010) (court below also applying "close nexus" test).

The court is aware that the Second Circuit's opinion in *DPH Holdings* is a summary order which does "not have precedential effect," (Second Circuit Local Rule 32.1.1.(a)). However, because that opinion is the only Second Circuit opinion to address the "close nexus" requirement

and is subsequent to the Third Circuit's decision in *Seven Fields,* the court deems following the Second Circuit's opinion in *DPH Holdings* to be the wiser course.

Determining whether the "close nexus" test has been satisfied is a fact sensitive endeavor. *See, e.g., Equipment Finders Inc. of Tennessee v. Fireman's Fund Ins. Co. (In re Equipment Finders, Inc. of Tennessee),* 473 B.R. 720 (Bankr. M.D. Tenn. 2012); *BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.),* 437 B.R. 160 (Bankr. D. Del. 2010); *In re WRT Energy Corp.,* 402 B.R. 717 (Bankr. W.D. La. 2007); *Kaye v. Dupree (In re Avado Brands, Inc.),* 358 B.R. 868 (Bankr. N.D. Tex. 2006), *cert. denied*, 2007 WL 2241660 (N.D. Tex. Aug. 3, 2007); *Gilbane Bldg Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.)*, 337 B.R. 864 (Bankr. S.D. Tex. 2006).

> Accordingly, bankruptcy courts have identified the following *nonexclusive* factors in determining whether post-confirmation jurisdiction exists . . . :
>
> (1) whether the claim or dispute arose before or after confirmation;
>
> (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits;
>
> (3) whether the plan has been substantially consummated;
>
> (4) the parties involved in the dispute;
>
> (5) whether state law or bankruptcy law applies;
>
> (6) whether the claims require the interpretation of the plan or the court's orders; and
>
> (7) evidence of forum shopping.

*WRT Energy, supra* at 724 (emphasis added) (citations omitted).

        **b.**       **Ben Cooper Does Not Create a "Bright Line" Jurisdictional Test Here**

The Debtor argues that the Second Circuit's opinion in *Ben Cooper, Inc. v. The Ins. Co. of the State of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir.), *vacated on other grounds,* 498 U.S. 964 (1990), *opinion reinstated,* 924 F.2d 36 (2d Cir. 1991), *cert. denied*, 500 U.S. 928 (1991), supplies a "bright line" test for Section 1334(b) jurisdiction in this proceeding. That is not true for two reasons.

*Ben Cooper* stands for the proposition that a postconfirmation dispute concerning a postpetition but preconfirmation contract *per se* gives rise to a core proceeding. In *Ben Cooper* the insurance contract was a postpetition but *preconfirmation* contract.[10] Here, both the subject contract and the dispute respecting it are postconfirmation. Those facts alone make *Ben Cooper* inapplicable here.[11]

Moreover, even if this proceeding is core for other reasons, *Ben Cooper* still does not supply a "bright line" test. That is because *Ben Cooper* did not apply (or even consider) the "close nexus" test which (as explained above) the Second Circuit now appears to apply even to core proceedings.[12]

---

[10]     In *Ben Cooper,* the case was commenced in April, 1988, the subject insurance contract was obtained in October, 1988 and the plan was confirmed on April 4, 1989. *See Ben Cooper, supra* at 1396. *DPH Holdings* is to the same effect. *See id.* at 136 ("Six of the eighteen contracts at issue are post-petition contracts, *which are part of the estate*." (emphasis added)). *See also DPH Holdings*, 437 B.R. at 93 (January 6, 2006 order authorizing Delphi to enter into certain relevant postpetition policies and agreements; plan confirmation initially in January 2008 and modified plan confirmed in July 2009).).

[11]     At least some of the confusion on that point probably was created by this court, which the court regrets.

[12]     It should be noted that, in *DPH Holdings,* the Second Circuit relied on *Ben Cooper* for the proposition that certain of the subject contracts were core, and then proceeded to engage in a "close nexus" analysis with respect to postconfirmation proceedings in respect of those contracts.

Because (also as explained above) the "close nexus" test is fact sensitive, the "close nexus" test properly is not subject to a "bright line" test.

### III. CONCLUSION

For the reasons discussed above, in order to determine Section 1334(b) jurisdiction *vel non* over this postconfirmation proceeding, this court will apply the "close nexus" test. Also as discussed above, the "close nexus" analysis is a fact sensitive inquiry. The post-trial briefs of the parties do not contain a separate statement of material facts. The court has determined that such would be helpful to the court. Accordingly, on or before October 2, 2012, each of the parties shall prepare and file with the court proposed findings of material facts (but not proposed conclusions of law) with respect to the "close nexus" test. Each proposed finding shall be supported by a precise citation(s) to the existing record of this adversary proceeding (*e.g.,* transcripts, exhibits) or to this chapter 11 case.[13]

It is **SO ORDERED.**

Dated: September 11, 2012                                         BY THE COURT

Lorraine Murphy Weil
Chief United States Bankruptcy Judge

---

*See DPH, supra.*

[13] New evidence is not being solicited hereby. The court may limit its review of the record to the proposed findings of fact filed in accordance herewith or, at its option, may elect to review other parts of the record as well. Because the court has reserved the Town's right to object to ECF No. 244 until *after* adjudication of the jurisdictional issues (*see* ECF No. 248 at 172:12-20), citations to that document (except as admissions, if otherwise appropriate) will not suffice for present purposes.